IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
On-Briefs January 31, 2001

## IN THE MATTER OF: KRISTEN LYNN BRIDGES, a minor, MARK ALLAN BRIDGES v. CARLA LYNN KING

**A Direct Appeal from the Juvenile Court for Shelby County**
**Nos. B6450 and C3176     The Honorable George Blancett, Judge**

---

**No. W2000-01919-COA-R3-CV - Filed April 11, 2001**

---

Paternity of minor child was established by a juvenile court consent order entered November 26, 1991, and custody of the child was awarded to Mother. In January, 2000, Father filed a petition to change custody on the basis of change of circumstances and the best interest of the child which was granted by the juvenile court referee. The referee's findings and recommendations were confirmed and made the decree of the court on May 25, 2000. Subsequently, on Mother's petition, an evidentiary hearing was held before the juvenile judge, and on July 6, 2000, after the evidentiary hearing, an order was entered reconfirming the referee's ruling of May 25, 2000. Mother has appealed. We reverse.

**Tenn.R.App.P. 3; Appeal as of Right; Judgment of the Juvenile Court Reversed**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and DAVID R. FARMER, J., joined.

Gail W. Horner, Germantown, For Appellant, Carla King

Lynda F. Teems, Memphis, For Appellee, Mark Allan Bridges

### OPINION

In this child custody case, the minor child's father, Mark Allen Bridges ("Father"), petitioned for change of custody of the minor child, Kristen Lynn Bridges. At the time of the petition, the child had resided with her mother, Carla King ("Mother"), since her birth in 1991. The child's parents

were never married, but by consent decree dated November 26, 1991, Father admitted paternity and agreed to pay all of the child's medical expenses.[1]

In January of 1992, the record indicates that Father filed a Petition for Custody and/or for Specific Visitation Privileges with the Juvenile Court. Father alleged that Mother, who has mild cerebral palsy and is under a limited guardianship[2], was unfit to have custody of the child. The parties reached an agreement regarding custody and visitation issues, and on February 3, 1993, the Juvenile Court entered a Consent Order providing that custody remain with Mother and granting liberal, scheduled visitation for Father.

During most of the time Mother had custody of the child, the two resided with Susie Henley, the maternal grandmother. Similarly, Father resided with his parents Ted and Jo Ann Bridges. Like Ms. Henley, Mr. and Mrs. Bridges assisted in caring for Kristen and had a close relationship with her. Although the custody and visitation arrangement appeared to work at first, as time went on, numerous disputes arose regarding what Father and his parents perceived as Ms. Henley's interference with visitation. Father filed several petitions for contempt regarding visitation, and several complaints were filed against the 10 year-old daughter of a Bridges family friend[3]. These complaints alleged sexual abuse, but after an investigation, the Department of Human Services found no evidence to support the allegations.

On January 14, 2000, Father filed this Petition for Modification which alleges a substantial and material change in circumstances warranting a change of custody. Specifically, Father alleges that Mother has abandoned the child by moving into an apartment, while leaving the child in the care and custody of the child's maternal grandmother. The Juvenile Court Referee recommended that custody of child be awarded to Father and, on May 25, 2000, the Juvenile Court judge confirmed the Referee's findings and recommendations as the court's decree. That same day, Mother petitioned for and obtained an order for a rehearing by the special judge. Following the hearing, the judge reconfirmed the decision of the Referee and found that Father should have custody of the parties' child.[4]

---

[1] Pursuant to the findings and recommendations of the Juvenile Court Referee, the Juvenile Court Judge modified the Consent Order to include child support.

[2] The Child's' maternal grandmother, Susie Henley, serves as Mother's guardian for purposes of Mother's financial and legal affairs. The record also indicates that Ms. Henley assists Mother with transportation, since Mother apparently cannot drive.

[3] Since the identity of individuals alleging child abuse is protected by law, the record does not indicate who filed the complaints against Kristen's playmate.

[4] We note that, on October 2, 2000, pending the appeal in this matter, a petition alleging Kristen was dependent and neglected was filed with DHS. On December 6, 2000, the juvenile court judge, pursuant to the Findings and Recommendations of Referee, dismissed the petition.

Mother appeals and presents three issues for review: (1) Whether the Petitioner/Father met his burden of proof in showing a material change of circumstances creating a substantial harm to the minor child and that a change of custody was in the best interests of the minor child; (2) Whether the trial judge abused his discretion in prohibiting the presentation of evidence; and (3) Whether the trial court erred in using a change of custody to punish the custodial parent for interference with visitation. Because we find for Appellant/Mother on the first issue, we pretermit the other issues presented on appeal.

The threshold issue in considering a petition to modify custody is whether there has been a material change in circumstances since the initial custody determination. See, e.g., *Placencia v. Placencia*, 3 S.W.3d 497, 499 (Tenn. Ct. App. 1999); *Massengale v. Massengale*, 915 S.W.2d 818, 819 (Tenn. Ct. App.1995); *Dailey v. Dailey*, 635 S.W.2d 391, 393 (Tenn. Ct. App.1981). Once the trial court determines that the petitioner has demonstrated a material change in circumstances, the court next determines what custody arrangement is in the best interests of the child. *See, e.g.*, *Placencia*, 3 S.W.3d at 499; *Varley v. Varley*, 934 S.W.2d 659, 665-66 (Tenn. Ct. App.1996); T.C.A. § 36-6-106 (2000 Supp.). Unless the trial court finds a material change in circumstances, however, the court must deny the petition to modify custody. *See Placencia*, 3 S.W.3d at 499.

In a custody modification proceeding, the burden is on the non-custodial parent to prove a change of circumstances. *See, e.g., Nichols v. Nichols*, 792 S.W.2d 713, 714 (Tenn. 1990); *Musselman v. Acuff*, 826 S.W.2d 920, 922 (Tenn. Ct. App. 1991). Because an original custody decree is *res judicata*, there is a strong presumption in favor of the custodial parent which the non-custodial parent can only overcome by demonstrating that the alleged change in circumstances is "material." *See Taylor v. Taylor*, 849 S.W.2d 319, 322 (Tenn. 1993); *Nichols*, 792 S.W.2d at 715-16. This Court has described "changed circumstances" as follows:

> When two people join in conceiving a child, they select that child's natural parents. When they decide to separate and divorce, they give up the privilege of jointly rearing the child, and the divorce court must decide which parent will have primary responsibility for rearing the child. This decision of the Court is not changeable except for "change of circumstances" which is defined as that which requires a change to prevent substantial harm to the child. Custody is not changed for the welfare or pleasure of either parent or to punish either parent, but to preserve the welfare of the child. *Custody is not changed because one parent is able to furnish a more commodious or pleasant environment than the other, but where continuation of the adjudicated custody will substantially harm the child.*

*Wall v. Wall*, 907 S.W.2d 829, 834 (Tenn. Ct. App. 1995)(citations omitted)(emphasis added).

In the case at bar, we hold that, as a matter of law, the trial court erred in failing to first apply the "material change in circumstances" test required in Tennessee. The record in this matter contains

no findings on the part of either the referee or the special judge which directly address the issue of material change. The Findings and Recommendations of Referee states, in relevant part:

> This case began as a paternity action filed November 21, 1991 with a consent order of paternity November 26, 1991. Since that time these parties have filled two legal jackets . . . mostly revolving around the efforts of the maternal grandmother to frustrate the father's visitation with the parties' child. Having heard the testimony of the parties and considering the record as a whole, the Court finds that ***it is in the best interest of the parties' child***, Kristen Lynn Bridges, born November 28, 1991, that custody be awarded to her father.

(emphasis added). The juvenile court special judge included no written findings in the Order reconfirming the original decree changing custody. The court's oral findings were as follows:

> THE COURT: The Court has had the opportunity to hear the witnesses presented in court today and to review the matters that have been presented to the Court for determination at this point about this child's life and also to read Dr. Luscomb's deposition, where he primarily describes his observation for Kristen to have a complete evaluation as to the most appropriate custodial person. But he does prescribe that whoever this custodial person is, that it be more for the sake of Kristen's special condition.
>
> As I observed during the direct and cross-examination of the witnesses, it appeared that most of the concerns that have been expressed to the court both at this hearing and, obviously, at the hearing before the Referee in May of this year, were the feelings of frustration that the noncustodial family, meaning the father and the paternal grandparents, felt they were receiving from the custodial parent, meaning the mother, Carla King, and the maternal grandmother, Ms. Henley.
>
> Carla King also has special circumstances where her mother is attending to her at times and concerned with her at all times, and that is certainly something to be expected and commended to her. Mark Bridges at this time, not for the same reasons but for obvious support, is dependent on his family for help and assistance, and Mark Bridges' family is also still dependent upon Ms. Henley for support and that's not to be criticized, that's to be complimented, that they would seek her out during this obvious period of turmoil that has existed, for their mutual love for this child.

Trying to weigh the tests that the Courts are instructed to pursue in matters like this not only through the statute laws and case laws but also from the direct reports from the appellate courts in this and other jurisdictions, *that we have to determine the relative appropriateness of the two parents in the matter when we have two parents in the case, Mr. Bridges and Ms. King, and they are both loving, concerned parents, not even close to the situation of any form of neglect or dependency.* The father, Mr. Mark Bridges, is living full time in the home with his parents, where the child has been placed since May of this year, and he has ambitions to move out with certain precautions being taken that he was planning for, he says. Carla King, the child's mother, is living independently in the community on a basis that is sanction by her mother, to add strength and support relative to primary care for herself, if not her child also.

During this period of independent living which started somewhere around August 1998, the mother either had or alleged to have had or did not have a full-time resident living with her of a friend name Jerry, which in response to a question to her, said that prior to the last court hearing that Jerry may have been living primarily full time with her and that he would either go home or some place else during the time that Kristen would come and visit on the weekends, or she would go and stay with Kristen at her mother's house on the weekends. *There was not enough definite proof to find anything from that testimony that the mother was doing anything improper under either set of circumstances, whether or not Jerry was a full-time resident or was he not a full-time resident. The Court doesn't find anything detrimental to either situation.* Ms. Henley has a fiduciary appointment of some nature of a limited guardianship for assistance to her child, to her daughter, Carla King. It appears that the maternal grandmother is employed only a couple of days a week now as opposed to the full-time employment which was suggested by the mother, and those hours, of course, are not too unusual working for Federal Express with late hours in the evening to early morning. Mr. Bridges, on the other hand, is working under a different status with Federal Express, and he works early in the morning until the afternoon hours, from 7:00 in the morning until 5:00 or 5:30 in the afternoon, from Saturday until Tuesday, it appears. The child psychologist is suggesting that whatever we do, that we make it as permanent as can be done for the best interests of Kristen.

In evaluating the overall situation involving Kristen Bridges, the Court finds that the decision by the Referee was the most

appropriate decision that was made, that custody should be with the father at this time and that the structured visitation should be adopted by the Order of This Court also as the Order of Visitation, with the parties being granted the liberty to expand or change or modify that as they feel is most appropriate for the best interest of the child, and the Order of This Court will be structured to encompass the Orders and recommendations of the Referee as recommended to the Court on May 25th of the year 2000. The court costs will be against the County.

(emphasis added).

If anything, the trial court's findings appear to indicate that the Father's allegations of abandonment are unfounded, and that Mother's changed living situation has had little or no effect on the parties' child. There is little in the court's findings which addresses the issue of interference with custody on the part of either the Mother or the maternal grandmother, Ms. Henley. The trial court appears to base its decision on the comparative fitness of the parents, the child's need for permanency as to custody, and a best-interests analysis. While these are appropriate considerations in custody determinations under T.C.A. § 36-6-106, a court does not address those issues before determining that there has, indeed, been a material change in circumstances. This is especially true, given the fundamental nature of the constitutional interests at play in a case involving child custody and visitation. *See generally In re: Askew*, 993 S.W2d 1, 3-5 (Tenn. 1999); *Hawk v. Hawk*, 855 S.W.2d 573, 577 (Tenn. 1993). From our review of the record, we determine that the proof does not establish a material change of circumstances to justify moving to the next step, i.e., best interest analysis.

Accordingly, the order changing custody is reversed, and the case is remanded to the juvenile court for such other proceedings as necessary, including the establishment of a liberal visitation schedule for Father. The parties and the extended families should be strongly admonished by the juvenile court that interference with the visitation will not be tolerated by the Court. Costs of the appeal are assessed against appellee, Mark Allan Bridges.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.

-6-