IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 1, 2010

**APRIL MICHELLE BRADY v. COLIN ASHLEY BRADY**

**Appeal from the Chancery Court for Maury County**
**No. 02-733      Stella L. Hargrove, Chancellor**

———————————

**No. M2009-00919-COA-R3-CV - Filed July 9, 2010**

———————————

Father appeals trial court finding of substantial and material change in circumstances and resulting modification of parenting plan. Finding no error, we affirm the judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which PATRICIA J. COTTRELL, P.J., M.S. and FRANK G. CLEMENT, JR., J., joined.

Michael D. Cox, Columbia, Tennessee, for the appellant, Colin Ashley Brady.

S. Jason Whatley, Columbia, Tennessee, for the appellee, April Michelle Brady.

**OPINION**

The parties to this appeal were divorced in 2003; in a post-divorce order entered in 2004, Mother was named the primary residential parent of the parties' two children. In May 2006, Father, alleging that a material change of Mother's circumstances had occurred justifying a change, petitioned the court to be named primary residential parent. Following a hearing, the court found a material change of circumstance and entered an order designating Father as primary residential parent. In its order, the court found, *inter alia,* that Mother was involved in a "classic case of domestic assault" with her boyfriend, Stephen Beard, on August 10, 2005; that, in the August 10 incident, Mr. Beard made threats toward the children; that the children had been in the custody of Father since August 17, 2005; and that, despite the fact that Mr. Beard was a "classic abuser of women," Mother continued in her relationship with him. The court applied the factors at Tenn. Code Ann. § 36-6-106 found that those factors, as well as continuity for and stability of the children, weighed heavily in Father's favor and that a change in primary residential parent designation was in the best interest of the children. The court expressed "significant concerns regarding

[Mother's] decision making abilities" and mental stability. The court allowed Mother visitation on weekends, to be supervised by her brother, and on Tuesdays and Thursdays to be held at a public place; the order specified that Mother would not allow Mr. Beard to be around the children. The order also directed counsel for the parties to prepare a permanent parenting plan.

In May 2008 Mother filed a petition seeking to be named primary residential parent or, alternatively, for increased visitation, citing a material change in circumstances based on Father's conduct since being named primary residential parent. Father answered and filed a counter-petition, denying the material allegations of the petition and seeking to hold Mother in contempt for not having supervised visitations as required by the prior order and for allowing the children to be around Mr. Beard.

Following a hearing on December 23, 2008, January 16 and February 10, 2009, the court entered an order, *inter alia,* expanding Mother's visitation, specifying holiday and vacation residential parenting time, and lifting the previous order restraining Mother from allowing the children to have contact with Mr. Beard. Father appeals, contending as follows:

> 1. [The] Trial court erred in modifying visitation schedule without Mother proving a material change of circumstance by a preponderance of the evidence. Tenn. Code Ann. § 36-6-101(a)(2)(c).
> 2. [The] Trial court erred in finding a material change in circumstance sufficient to modify parenting schedule.
> 3. [The] Trial court applied an incorrect standard in addressing best interests of the children.
> 4. [The] Trial court erred in finding that modification was in the best interest of the children.

DISCUSSION

The parties agree that Tenn. Code Ann. § 36-6-101(a)(2)(C)[1] governs the consideration of the issues in this appeal.[2] We note, however, that the May 2006 order did not constitute a permanent parenting plan, as contemplated in Tenn Code Ann. § 36-6-404; it merely changed the designation of primary residential parent from Mother to Father and gave Mother "visitation" from 2:00 p.m. to 8:00 p.m. on Saturdays when she was working and from 9:00 a.m. until 8:00 p.m. on Saturdays when she wasn't working; from 9:00 a.m. to 8:00 p.m. on alternating Sundays; and on Tuesdays and Thursdays from 6:00 p.m. to 8:00 p.m. until the oldest child began school. The order required counsel for the parties to submit a permanent parenting plan; however, the record does not show that a permanent parenting plan was entered. It is clear from the record before us, as more fully explained hereinafter, that the failure to have a comprehensive parenting plan in place led to many difficulties, which, in turn, led to the filing of Mother's petition and Father's counter-petition and the entry of the order upon which the issues in this appeal are based. Our disposition of the issues presented for review, as well as our consideration of the proof introduced at the hearing, are done in light of the fact that the May 2006 order was not a permanent parenting plan and that there were considerable "loose ends" attendant to the May 2006 order; consequently, we must adapt our analysis and application of the law to these facts accordingly.

---

[1] Tenn. Code Ann. § 36-6-101(a)(2)(C) provides:

If the issue before the court is a modification of the court's prior decree pertaining to a residential parenting schedule, then the petitioner must prove by a preponderance of the evidence a material change of circumstance affecting the child's best interest. A material change of circumstance does not require a showing of substantial risk of harm to the child. A material change of circumstance for purposes of modification of a residential parenting schedule may include, but is not limited to, significant changes in the needs of the child over time, which may include changes relating to age; significant changes in the parent's living or working condition that significantly affect parenting; failure to adhere to the parenting plan; or other circumstances in the residential parenting time in the best interest of the child.

[2] While Mother's petition was styled "Petition for Change of Custody or, In the Alternative, Petition for Increased Visitation and Petition for Criminal Contempt of Court," the prayer for relief sought, *inter alia,* that she "be named as the primary residential parent of the minor child or, at least, be given some reasonable level of visitation." Mother has not appealed the failure of the court to name her primary residential parent. Consequently, while Tenn. Code Ann. § 36-6-101(a)(2)(B) was also before the trial court for consideration, Tenn. Code Ann. § 36-6-101(a)(2)(C) governs the appeal.

When a petition to change or modify custody is filed, the parent seeking the change has the burden of showing (1) that a material change in circumstances has occurred and (2) that a change in custody or residential schedule is in the child's best interest. *Kendrick v. Shoemake*, 90 S.W.3d 566, 575 (Tenn. 2002); *Blair v. Badenhope,* 77 S.W.3d 137, 148 (Tenn. 2002); *In re M.J.H.,* 196 S. W.3d 731, 744 (Tenn. Ct. App. 2005); *In re Bridges*, 63 S.W.3d 346, 348 (Tenn. Ct. App. 2001). A finding that a material change in circumstances has occurred is a threshold inquiry that, when made, allows the court to proceed to make a fresh determination of the best interest of the child. *Kendrick*, 90 S.W.3d at 569; *Badenhope*, 77 S.W.3d at 150; *Cranston v. Combs*, 106 S.W.3d 641, 644 (Tenn. 2003); *Curtis v. Hill*, 215 S.W.3d 836, 840 (Tenn. Ct. App. 2006). "[I]f the petition is denied for failure to prove a material change of circumstance, modification is not to be considered." *Burchett v. Burchett*, M2008-00790-COA-R3-CV, 2009 WL 161084, at *2 (Tenn. Ct. App. 2009).

Father contends that the trial court applied the wrong standard in determining whether Mother had met her burden of proof. Specifically, Father cites several comments by the court in the course of the hearing which, Father argues, show that the court reached the conclusion that a change in the parenting schedule was appropriate even though it also stated that Mother had not shown a substantial and material change.

The record shows that on the second day of the hearing, the court made the following statements:

> . . . From what I've heard thus far, I'll tell you right now my thoughts are that [Mother] has not carried her burden of proof as to a substantial and material change in circumstances; however, this court feels its in the best interest of these children to modify the visitation. And I'm not convinced that that shouldn't be unrestricted visitation, with my trusting [Mother] to protect these children, and at no time - - - and to assure me that no time [sic] will Mr. Beard be there. . . .
> One of the things that bothers me, about [Father] . . . he's taken the position that I have empowered him to be in such great control over this that it bothers me. . . .
> This Ashley [Father's then girlfriend] needs to back off when she gets her children. She doesn't need to be front and center for that. . . . She needs to back off. You know, that's not acting in the best interest of the children in trying to foster a relationship with the mother. . . . That's disruptive. But those are the kind of things I'm thinking right now.
> - - - what [Father] has to know is that visitation is a guaranteed minimum. . . . Why do you want to be so rigid and inflexible? And I understand [Father] wants to be that way because this mother has never, never

done right. She's not gotten rid of this man that the Court doesn't approve of. I'm aware of that. But I want to put the mother in a position to see these girls and to - - They are going to need her more and more as they become teenagers. Ashley can't fulfill that role, I guarantee you. Only their mother can.

And, you know, she's come a long way. She's not there yet. She still has Mr. Beard. I don't understand that.

I thought about asking her . . . if she put Mr. Beard out of her life and I gave her custody, would she do that? But I can't trust her answer, so I can't ask that. And I can't tell her how to live her life, but I've told her where I stand. I can't dictate what she does with her life.

So that's what I'm thinking right now. So what you-all need to do is convince me otherwise. Is that fair?

We do not construe the statement by the court that Mother had not met her burden of proof as being intended to make the threshold finding required to proceed to the determination of the modifications to the parenting schedule that would be in the best interest of the children. Rather, taken in context, it appears that the statement was made in an effort to encourage the parties to attempt to resolve the matter without the necessity of further proof being taken and, failing amicable resolution, to expedite the hearing.[3]

The court did make one comment which is contrary to the law on the second day of the hearing in the course of discussing with counsel whether a material change of circumstances needed to be shown in order to modify visitation, as opposed to custody, when it made the following statement:

If I think its in the best interest of these children to modify visitation, I feel like I can do that . . . without showing a material change in circumstances.

In the court's ruling on the day of the final hearing, and incorporated into the final order, however, the court found that Mother had met her burden of proof of showing a material change in circumstance. Consequently, this misstatement of the law, made during the course of trial, was of no consequence. In any event, inasmuch as the question of whether a material change of circumstance was shown is a question of law, we review the evidence *de novo* without a presumption of correctness. *Kendrick, supra.,* at 569-70.

---

[3] The comments by the court were made immediately prior to a lunch recess and ended with the court making suggestions of possible changes to the parenting schedule. Following the recess, counsel advised the court that no agreement had been reached and the court and counsel proceeded to discuss scheduling, the presentation of further proof and modification of the parenting schedule under Tenn. Code Ann. § 36-6-101(a)(2)(C).

There are no bright line rules as to the requirements necessary to modify a residential parenting schedule, but the Tennessee Supreme Court has directed courts to consider (1) whether the change occurred after the entry of the order sought to be modified; (2) whether the change was known or reasonably anticipated when the order was entered; and (3) whether the change is one that affects the child's well-being in a meaningful way. *Cranston,* 106 S.W.3d at 644 (citing *Kendrick*, 90 S.W.3d at 570). In addition, Tenn. Code Ann. § 36-6-101(a)(2)(C), quoted above, includes a non-exhaustive list of circumstances that might constitute a material change for purposes of modifying a residential parenting schedule.

In response to Father's argument that the court erred in finding a material change of circumstances, Mother primarily cites to proof of Father's conduct since being named primary residential parent in support of her contention that a change of circumstances occurred. Specifically, she contends that the proof shows that Father "violated the terms and/or spirit of the Court's May 2006 order and otherwise abused his role as primary residential parent." Many of the specific incidents testified to by Mother relate to difficulties with Father in implementing the visitation schedule, including inconsistent weekend visitation caused in part by her work schedule and in part by Father's failure to make the children available to her for visitation; difficulties in exercising visitation during holidays; inability to receive information pertaining to softball practices and other activities in which the children were involved; Father's asserted efforts to exchange increased visitation with the children for sex with Mother; and difficulties encountered with Father's girlfriend (to whom Father was engaged at the time of the hearing) when exercising visitation. For his part, Father denied many of the charges made by Mother and testified that much of the difficulty with Mother's exercise of visitation was due to her work schedule. Father testified that he had tried to make the May 2006 order work but that doing so was "difficult" and that he had "primary concerns" about Mother's behavior, "lack of commitment to the kids," and her continuing relationship with Mr. Beard. The court called the oldest child as a witness and other witnesses testified on behalf of both parties.

Taken as a whole, the testimony supports a conclusion that a change of circumstances had occurred since the entry of the May 2006 order and that modifications to the order and the entry of a comprehensive permanent parenting plan was appropriate. Both parties testified as to difficulties in implementing the prior order, limited as it was; the problems caused by the failure to have specific provisions for parenting time on holidays, for sharing information about activities in which the children were involved and by the failure to enter a plan which complied with Tenn. Code Ann. § 36-6-404 in obedience to the May 2006 order were manifest in this record. The record shows that the "loose ends" and ambiguities in the

May 2006 order allowed Father to effectively control Mother's access to the children, to their detriment.[4]

In addition, to the extent the "visitation" provisions of the May 2006 order were based on the court's concerns about Mother's decision-making abilities and mental stability, the testimony of Ms. Glenna Mingledorff, a licensed professional counselor who evaluated Mother, supports a finding of a material change of circumstance. After expressing her opinion that Mother is "mildly depressed based primarily because of situational factors,"[5] Ms. Mingledorff testified as follows:

> Q. . . . in evaluating Ms. Brady's present condition, did you look at what happened to her in the recent past; and by recent past, I mean the episodes in 2005?
> A. Yes.
> * * *
> Q. What were the primary things that you considered that she said happened in '05 that went into evaluation of where she is today?
> A. What I looked at was during that time, she was experiencing a large amount of anxiety around her safety, the safety of her children, a sense that she could not get help and she couldn't do anything about it–a large sense of helplessness. Okay?
> When I look at her now, she no longer has that sense that everyone is out to hurt her and her children, that everyone is engaged in–the paranoia is gone. She is able to take action to change things, to do things, whether it's at work, whether it's at home.
> She is able to make decisions. She is able to act on those decisions. So I guess I just looked at a time where, by her own reporting, she felt very overwhelmed and unable to act to a time where now she is very capable of evaluating situations more objectively and taking action.

---

[4] "A child's interests are well-served by a custody and visitation arrangement that promotes the development of relationships with both the custodial and the noncustodial parent." *Pizzillo v. Pizzillo*, 888 S.W.2d 749, 755 (Tenn. Ct. App. 1994).

[5] Ms. Mingledorff described the "situational factor" of Mother as:

Ms. Brady has been in the situation of not having much time with her children and the whole trauma of having lost them, and this is problematic for her. She misses them; they miss her. The conflict between her and Mr. Brady is problematic. So it's just been a chaotic time for her.

We, therefore, affirm the trial court's finding of a material change of circumstance. We next turn to a review of the court's determination that modifying the parenting schedule was in the best interest of the children.

Father contends that "[t]he continued presence of Mr. Beard as an integral part of [Mother's] life should be sufficient proof that it was not in the best interest of the minor children that she be given additional time" and that this "overriding factor should have militated against the Trial Court granting [Mother's] Petition." We respectfully disagree.

Much time and testimony at trial was devoted to issues surrounding Mother's relationship with Mr. Beard, particularly whether Mother was dependent upon him and whether he was an abuser, as the court had found in the May 2006 proceedings. Father's argument that increasing Mother's parenting time is not in the best interest of the children is, thus, premised on his concerns regarding Mother's relationship with Mr. Beard. While that relationship may bear on the question of whether any terms, circumstances or restrictions should be imposed attendant to the exercise of Mother's parenting time, the specific issue at hand is whether modifications to the May 2006 order, which would have the effect of allowing Mother more parenting time, is in the best interest of the children. We find no basis in this record for holding that increasing Mother's parenting time with the children would not be in their best interest; indeed, other than reference to Mr. Beard, Father points to no proof that would support a contrary finding.

We do not take lightly Father's concerns regarding Mother's relationship with Mr. Beard. As noted, much of the trial testimony related to this relationship. The trial court heard the proof, saw the witnesses, made appropriate credibility determinations and determined that Mr. Beard's presence did not pose a threat to either Mother or the children. Upon our review of the record, there is no doubt that the court considered all the evidence, as well as the concerns expressed by Father, in making its determination.[6] Trial courts have broad discretion to fashion parenting plans that best suit the unique circumstances of each case, *see Parker v. Parker*, 986 S.W.2d 557, 563 (Tenn. 1999), and decisions regarding parenting schedules often hinge on subtle factors, such as the parent's demeanor and credibility during the proceedings. *Adelsperger v. Adelsperger*, 970 S.W.2d 482, 485 (Tenn. Ct. App. 1997). Thus, a trial court's decision regarding a permanent parenting plan will be set aside only when it "falls outside the spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence found in the record." *Id.*

---

[6] The court elicited specific testimony from Ms. Mingledorff in that regard and found her testimony that Mr. Beard posed no threat to be "credible and convincing."

The record supports the trial court's modification of the May 2006 order and the order appealed from complies with the requirements of Tenn. Code Ann. § 36-6-404. It is, accordingly, affirmed.

The case is remanded to the Chancery Court for Maury County for such further proceedings as may be appropriate.

_____

RICHARD H. DINKINS, JUDGE