IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
December 15, 2010 Session

## JERRY ALAN RICHARDS v. TINA LOU RICHARDS

**Appeal from the Circuit Court for Sevier County**
**No. 2002-0491-II      Richard R. Vance, Judge**

_____

**No. E2010-00521-COA-R3-CV-FILED-MAY 31, 2011**

_____

This is a post-divorce case where both parties sought to modify the existing custody arrangement. At the time of the divorce, the parties agreed to equal co-parenting time. Upon the mother's request for modification, the court designated her as the primary residential parent and awarded the father standard co-parenting time. The trial court also ordered the father to pay child support and certain outstanding expenses incurred by the mother toward the child's care. Further, the mother was awarded her attorney fees. In the initial appeal, we found that a material change in circumstances had not been proven. Accordingly, we reversed the trial court's modification of the original custody arrangement and reinstated the initial permanent parenting plan. We also vacated the trial court's order as to child support, the payment by the father of expenses incurred by the mother, and the award of attorney fees to the mother, and remanded the case to the trial court for further proceedings. The matter was reheard, with the parties stipulating that there has been a material and substantial change in circumstances. The trial court again named the mother primary residential parent, with the father having co-parenting time every other weekend and on an alternating two-week schedule in the summer. The father appeals. We hold that the evidence does not preponderate against the trial court's findings. The judgment of the trial court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR. and D. MICHAEL SWINEY, JJ., joined.

Robert W. White, Maryville, Tennessee, for the appellant, Jerry Alan Richards.

Rebecca D. Slone, Dandridge, Tennessee, for the appellee, Tina Lou Richards (Long).

# OPINION

## I. BACKGROUND

The parties, Jerry Alan Richards ("Father") and Tina Lou Richards (Long) ("Mother"), were divorced on February 18, 2003, and a permanent parenting plan ("the Plan") was entered with the trial court regarding their minor child ("the Child"). The Plan provided that Father and Mother, who lived at the time within fifteen minutes of each other, had the Child in one week intervals with the exchange to occur on Sunday evenings. If Father moved, the Plan provided that the parties would mediate a new schedule. There was no mention of either party paying child support.

In April 2004, Mother filed a petition for modification, alleging a substantial and material change in circumstances that made it in the Child's best interest to reside primarily with her. According to Mother, Father had not been exercising the full amount of his co-parenting time. In July 2005, Father filed a petition for primary residential custody, claiming that Mother had denied him co-parenting time. On November 22, 2005, an order was entered by the trial court naming Mother as the primary residential parent and ordering Father to reimburse Mother for certain expenses (medical and educational) and fees (supervision and babysitting) for the Child, as well as her attorney fees. The amount owed by Father was determined to be $8,409. He was instructed to pay 20% immediately in a lump sum with the remaining balance to be paid in equal monthly installments of $280.30 per month for 24 months. Father was awarded co-parenting time every other weekend and on alternating weeks in the summer. The order, entered *nunc pro tunc* to August 17, 2005, required Father to pay monthly child support in the amount of $733.

After Father appealed, we found that neither party had proven a material change in circumstances. Accordingly, we issued an opinion reversing the trial court's November 2005 order, reinstating the original custody arrangement, and vacating the trial court's order as to child support, expenses, and attorney fees.

On September 13, 2007, the case was reheard by the trial court. The parties stipulated that there had been a material change in circumstances. The trial court provided as follows:

> THE COURT: This has been a very contentious relationship between these two parents over the course of several years since their original divorce. The Court has to observe and I think I've previously found and I find today, that they do not cooperate fully with one another, that oftentimes their personal pride, ego, or whatever has interfered with that relationship and communication. And all of that is not in the best interest of [the Child]. It

hurts him to know that his parents are down here at the courthouse fighting each other. But they have not been able to agree, so they've presented their cases here today. The Court has considered very carefully the testimony, the exhibits, statements and arguments of counsel in the entire record of this cause.

The parties have stipulated that material changes of circumstances which have adversely affected the welfare of [the Child] have occurred, and that a modification of the parenting plan is warranted. The Court has considered in determining the issues presented all those factors as set out in Tennessee Code Annotated § 36-6-404 in making its findings.

The Court is confronted with a situation where the mother lives in White Pine, Tennessee, and the father in Louisville, Tennessee, or near Louisville, a distance of fifty miles and an hour's drive each way. It is simply unworkable and a burden and undue hardship on this child, seven year old child, soon to be eight, to have to travel back and forth to attend school. It's hard enough on weekend schedules because that's an hour out of his day. In any event, the father is seeking primary residential parental control and would enroll the child in Blount County. He has indicated that he would be willing to move to White Pine, Tennessee, but he's under no obligation to do so. While the mother seeks to retain primary residential parental right and keep [the Child] in his presently enrolled school where he is in his, I guess third year. He attended preschool, kindergarten, and perhaps the first grade. But in any event, that's where he's lived and gone to school all of his school years.

Both of these parents love their son, that's not a question; that each would like to have as much time as possible with him and raise him and be the parents, but circumstances are that they are no longer husband and wife. They've been divorced for a number of years, and that's simply not possible. The mother now resides with her present husband and stepchildren in a house owned in White Pine, Tennessee. From the testimony, this appears to be a stable family unit in which everyone gets along. The father has not remarried and lives alone in an apartment. While [the Child] has a strong relationship from all indications that I've seen with both parents, it appears that the mother has taken the greater responsibility for the daily needs of [the Child] throughout his lifetime.

It appears to the Court, and it's clear that neither party has been fully willing to cooperate with the other parent in fostering a close relationship with the other parent. There's been too much aggravation between the two of them,

-3-

which they need to lay aside, let it go. Whatever happened in the past to divide you as a family is gone, it's history. You've got a child to raise, and that should be the primary consideration.

While both parents are financially able to provide for all of the necessities and care for [the Child], it must be noted that while there's no order to do so, that [Father] has paid nothing toward support for [the Child] to [Mother] now. It also must be noted he is not paying a portion of extra expenses for medical care, for school, expenses for child care and others as required by the original parenting plan. In balance from the evidence presented it appears that the mother has been the primary caregiver and has taken the greater responsibility in performing those parental duties.

The love, affection, and emotional ties between a child and both his parents is equally balanced. He loves you both, I've said that, as a parent. And each is fit to address the emotional needs and development of [the Child], and each is physically and emotionally fit to be a parent. As I have observed, sometimes the frustration with the other parent has overridden reason in communicating and dealing with what must be done for [the Child]. Primarily the transportation back and forth. This shouldn't be any sort of a problem at all, just do it and be responsible toward the other parent. Likewise, it appears to be equally balanced, there's no evidence to the contrary, about the child's interaction with other significant family members from either side.

An important factor . . . is the continuity of a child's life to consider -- considering the statutory factors. It appears that [the Child] is in a stable, satisfactory environment with his mother by a preponderance of the evidence. That's in favor of the mother. That's not to say that he doesn't have a good environment with his father when he's with him. There is no evidence of any kind of any abuse by either parent against [the Child]. And there's no evidence against any person who resides with or frequents the home of either parent with the possible exception of the testimony regarding [Father's] mother. And at this time the Court believes that it is not in [the Child's] best interest that he be left in the sole care of [paternal grandmother] as the adult caregiver. That may change in the future. I hope it does. But for the time being, that is a reasonable request.

All in all from all the evidence, the Court finds that the evidence does preponderate in favor of the mother, Tina Richards Long, as the primary residential parent. The schedules of the work of the parents, the distances

involved is a significant hurdle to try and to balance and to equalize the time that each parent has with [the Child]. During the school year, it's simply unworkable to carry him back and forth on any school day from Blount County to White Pine. So the previously entered parenting plan will be modified to accommodate the work and school schedules as follows: The father shall have . . . primary parental control . . . every other weekend from Friday at 6:00 P.M. until Sunday at 6:00 P.M. during the school year. . . .

During the summer months, . . . the summer vacation from school, the parents shall alternate co-parenting on a two week to two week rotation. This will give each parent two weeks at a time with [the Child]. One week at a time is just sometimes not enough when there's this much distance between not only the residences but the distances between the community and other family members in order to be able to keep that close relationship. So it will be on a two week schedule. That will begin with the Sunday following the end of school, the week will be from Sunday to 6:00 P.M. until the next Sunday at 6:00 P.M., two weeks from then where [Father] would have that first two week period beginning the Sunday following the last day of school. . . .

* * *

. . . I'm going to order in ninety days each of you must attend, file a new certificate of completion of the parenting class. Pay attention to what they're telling you, because that they're telling you is not how to be a parent, it's from the viewpoint of your son, how it affects him, how every time there's a conflict, whether it's a lack of communication, how that affects him. That's the Court's primary interest, and under the law that is my primary concern, what is in his best interest.

Given [the Child's] hemophilia, that he should not be permitted to operate any type of motor vehicle, motor-driven vehicle, whether electric or gas, until such time as he is old and mature enough to understand . . . the safe operation of the vehicle and understand and appreciate the risks. While that may seem a bit vague, I want to make it an absolute prohibition against operation of any type of motorcycle, four-wheeler, all terrain vehicle, the risks are simply too high for injury which could lead -- it's bad enough for an ordinary person, but with hemophilia, it would certainly be life-threatening, and he doesn't need to be on four-wheelers and three-wheelers and motorcycles and ATV's, that type thing, off road.

The parties shall adhere to the parental rights as set forth in the Tennessee Code Annotated § 36-6-110, and I want each party, the attorneys will prepare a copy of those, and want each party to sign and file with the Court a copy of that to acknowledge that they have read and understand what it says, and that should be a part of -- those rights shall be a part of this Order.

\* \* \*

The Court finds based upon the evidence that [Father] has not paid his portion of the medical, school, child care related expenses for [the Child] as previously been ordered in the parenting plan. That's [Father's] responsibility. He has not done that. The Court finds . . . those attorney's fees are reasonable and should be paid and paid as requested . . . .

The amount of child support will be calculated . . . based upon the relative incomes of the parents, the number of days of parental responsibility. And giving [Father] the consideration that he has a support obligation for this daughter, Katie, of [$153] per week. The Court finds that the mother's income is [$500] a week, the father's income is [$13.75] for a forty hour week with one additional hour per week on average at one and a half times that rate for his total weekly earnings. [Father] is obligated and is having deducted health and dental insurance for [the Child] which he's entitled to consideration under the child support guidelines. Forty dollars a week was his testimony under the family plan. Child support payments will be paid directly until the wage assignment kicks in because it will take probably a cycle or two, a month or so for that to kick in, the wage assignment to be executed. The court costs will be assessed against [Father].

\* \* \*

. . . [Father] hasn't paid a dime. . . . That didn't help [Father] a bit in this hearing at all because that goes directly to one of the significant factors that the Court must consider under the law, and that is the willingness and ability of each parent to provide support and maintenance for the child. He hasn't done that. And I have to consider that. The proof is, and there's no proof to the contrary, that these are the correct amounts. I found them to be the correct amounts for those expenses.

\* \* \*

. . . But what I have found that [Father] hasn't paid is doctor bills, school expenses, things that have been testified that he was obligated to pay under the previous parenting plan. . . .

On September 22, 2009, Father was ordered to pay $521 per month in child support. The trial court found that Father owed the sum of $15,221.90 to Mother and set forth a payment plan. On February 5, 2010, an amended order was entered that provided as follows:

1. The Defendant's child support obligation, which was reserved based on the decision of this Court from the hearing and announcement on September 17, 2007, shall be $69.00 per month beginning with the month of October 2007 and going through the month of December 2008 . . . ;

2. The Defendant's child support obligation, from the month of January 2009 forward and current child support obligation shall be $473.00 per month . . . .

Father filed a timely appeal.

## II. ISSUES

The issues we review in this case are restated as follows:

1) Whether the trial court correctly found that the Child's best interests were served by naming Mother primary residential parent and awarding her the majority of the co-parenting time.

2) Whether the trial court properly ordered Father to pay expenses for the Child and attorney fees.

## III. STANDARD OF REVIEW

An order of the trial court making a modification of custody is a finding of fact that the best interest of the child is served by that court order. The de novo review of the findings of fact by the trial court is accompanied with a presumption of correctness of the finding. Tenn. R. App. P. 13(d); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). We will not overturn those findings unless the evidence preponderates against them.

*Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. *Watson v. Watson*, 196 S.W.3d 695, 701 (Tenn. Ct. App. 2005). The trial court is in the best position to weigh the credibility of the witnesses and the evidence presented at trial. *Seals v. England/Corsair Upholstery Mfg. Co.*, 984 S.W.2d 912, 915 (Tenn. 1999). The trial court's conclusions of law are accorded no presumption of correctness. *Presley v. Bennett*, 860 S.W.2d 857, 859 (Tenn. 1993).

Trial courts have broad discretion to fashion parenting plans that best suit the unique circumstances of each case, *see Parker v. Parker*, 986 S.W.2d 557, 563 (Tenn. 1999), and decisions regarding parenting schedules often hinge on subtle factors, such as the parent's demeanor and credibility during the proceedings. *Adelsperger v. Adelsperger,* 970 S.W.2d 482, 485 (Tenn. Ct. App. 1997). Thus, a trial court's decision regarding a permanent parenting plan will be set aside only when it "falls outside the spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence found in the record." *Id.*

## IV. DISCUSSION

### A. Modification

When a petition to change or modify custody is filed, the parent seeking the change has the burden of showing (1) that a material change in circumstances has occurred and (2) that a change in custody or residential schedule is in the child's best interest. *Kendrick v. Shoemake,* 90 S.W.3d 566, 575 (Tenn. 2002); *Blair v. Badenhope,* 77 S.W.3d 137, 148 (Tenn. 2002); *In re M.J.H.,* 196 S. W.3d 731, 744 (Tenn. Ct. App. 2005); *In re Bridges,* 63 S.W.3d 346, 348 (Tenn. Ct. App. 2001). A finding that a material change in circumstances has occurred is a threshold inquiry that, when made, allows the court to proceed to make a fresh determination of the best interest of the child. *Kendrick,* 90 S.W.3d at 569; *Badenhope,* 77 S.W.3d at 150; *Cranston v. Combs,* 106 S.W.3d 641, 644 (Tenn. 2003); *Curtis v. Hill,* 215 S.W.3d 836, 840 (Tenn. Ct. App. 2006). "[I]f the petition is denied for failure to prove a material change of circumstance, modification is not to be considered." *Burchett v. Burchett,* M2008-00790-COA-R3-CV, 2009 WL 161084, at *2 (Tenn.Ct.App. M.S., Jan. 22, 2009).

There are no bright line rules as to the requirements necessary to modify a custody arrangement, but the Tennessee Supreme Court has directed courts to consider (1) whether the change occurred after the entry of the order sought to be modified; (2) whether the change was known or reasonably anticipated when the order was entered; and (3) whether the change is one that affects the child's well-being in a meaningful way. *Cranston,* 106

S.W.3d at 644 (citing *Kendrick,* 90 S.W.3d at 570).

A 2004 amendment to Tenn. Code Ann. § 36-6-101(a)(2) differentiated between modification of a custody decree change of "primary residential parent" and modification of a parenting plan schedule. *Scofield v. Scofield*, No. M2006-00350-COA-R3-CV, 2007 WL 624351, at *3 (Tenn. Ct. App. M.S., Feb. 28, 2007). Prior to the amendment, the showing of a material change in circumstances was the same for both modifications of custody and parenting plans. *See id.* However, after the amendment, the statute reads:

> (B) If the issue before the court is a modification of the court's prior decree pertaining to custody, the petitioner must prove by a preponderance of the evidence a material change in circumstance. A material change of circumstance does not require a showing of a substantial risk of harm to the child. A material change of circumstance may include, but is not limited to, failures to adhere to the parenting plan or an order of custody and visitation or circumstances that make the parenting plan no longer in the best interest of the child.

Tenn. Code Ann. 36-6-101(a)(2)(B). A new subsection addressing modification of a parenting schedule was added:

> (C) If the issue before the court is a modification of the court's prior decree pertaining to a residential parenting schedule, then the petitioner must prove by a preponderance of the evidence a material change of circumstance affecting the child's best interest. A material change of circumstance does not require a showing of substantial risk of harm to the child. A material change of circumstance for purposes of modification of a residential parenting schedule may include, but is not limited to, significant changes in the needs of the child over time, which may include changes relating to age; significant changes in the parent's living or working condition that significantly affect parenting; failure to adhere to the parenting plan; or other circumstances making a change in the residential parenting time in the best interest of the child.

Tenn. Code Ann. § 36-6-101(a)(2)(C). As we noted in *Blakes v. Sims*, No. W2007-02129-COA-R3-CV, 2008 WL 5130425, at * 5 (Tenn. Ct. App. W.S., Dec. 5, 2008),

> As a result of the 2004 amendment, Tennessee now has a different set of criteria for determining whether a material change of circumstance has occurred to justify a modification of a 'residential parenting schedule' and the

specifics of such a schedule." *Scofield*, 2007 WL 624351, at *3. "The amendment, specifically the addition of subsection (a)(2)(C), establishes different criteria and a lower threshold for modification of a residential parenting schedule." *Id.* (citing *Rose v. Lashlee*, No. M2005-00361-COA-R3-CV, 2006 WL 2390980, at *2, n. 3 (Tenn. Ct. App. Aug. 18, 2006) (holding that Tennessee Code Annotated section 36-6-101(a)(2)(C) "sets a very low threshold for establishing a material change of circumstances")). . . .

In the instant case, the modification sought concerned the primary residential parent, so subsection (a)(2)(B) criteria are at issue.

During the course of the proceedings, the parties stipulated that a material change in circumstances had occurred. Taken as a whole, the testimony supports the trial court's conclusion that a change of circumstance indeed had occurred since the entry of the prior order and that modifications to the order and the entry of a new parenting plan was appropriate. With Mother's move from Seymour to White Pine upon her remarriage, the distance between the parties is too great to continue co-parenting pursuant to the initial Plan. Mother also established that Father had allowed the Child to participate in activities that are potentially detriment to the youngster's health. Furthermore, Father disobeyed the trial court's prior order by leaving the Child in the paternal grandmother's care. Perhaps most significant, Father has failed to provide anything more than insurance for the Child, despite the initial Plan's provision that "[t]he parents agree to split equally the costs of clothing the minor child and for school expenses," babysitter, medical care, and dental/orthodontic care.

We now must determine whether the trial court's modification – designating Mother as the primary residential parent – was in the best interest of the Child. *Cranston*, 106 S.W.3d at 644. The factors included in Tenn. Code Ann. §§ 36-6-106 and 36-6-404 are taken into consideration.

Tenn. Code Ann. § 36-6-404(b) provides as follows:

(1) The parent's ability to instruct, inspire, and encourage the child to prepare for a life of service, and to compete successfully in the society that the child faces as an adult;

(2) The relative strength, nature, and stability of the child's relationship with each parent, including whether a parent has taken greater responsibility for performing parenting responsibilities relating to the daily needs of the child;

-10-

(3) The willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent, consistent with the best interests of the child;

(4) Willful refusal to attend a court-ordered parent education seminar may be considered by the court as evidence of the parent's lack of good faith in these proceedings;

(5) The disposition of each parent to provide the child with food, clothing, medical care, education, and other necessary care;

(6) The degree to which a parent has been the primary caregiver, defined as the parent who has taken the greater responsibility for performing parental responsibilities;

(7) The love, affection, and emotional ties existing between each parent and the child;

(8) The emotional needs and developmental level of the child;

(9) The character and physical and emotional fitness of each parent as it relates to each parent's ability to parent or the welfare of the child;

(10) The child's interaction and interrelationships with siblings and with significant adults, as well as the child's involvement with the child's physical surroundings, school, or other significant activities;

(11) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment;

(12) Evidence of physical or emotional abuse to the child, to the other parent or to any other person;

(13) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child;

(14) The reasonable preference of the child if twelve (12) years of age or older. . . .

(15) Each parent's employment schedule, and the court may make

accommodations consistent with those schedules; and

(16) Any other factors deemed relevant by the court.

These factors incorporate those set out in Tenn. Code Ann. § 36-6-106,[1] the statute by which trial courts were guided in custody determinations prior to the parenting plan legislation. *See Hines v. Simms*, No. M2003-01459-COA-R3-CV, 2004 Tenn. App. LEXIS 552, at *16 (Tenn. Ct. App. M.S., Aug. 24, 2004).

As to the factors considered, Father asserts that the trial court improperly ruled that Mother had taken the greater responsibility for the daily needs of the Child; he contends that

---

[1]The factors listed in Tenn. Code Ann. § 36-6-106 are as follows:

(1) The love, affection and emotional ties existing between the parents and child;

(2) The disposition of the parents to provide the child with food, clothing, medical care, education and other necessary care and the degree to which a parent has been the primary caregiver;

(3) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment; . . . .

(4) The stability of the family unit of the parents;

(5) The mental and physical health of the parents;

(6) The home, school and community record of the child;

(7) The reasonable preference of the child if twelve (12) years of age or older. The court may hear the preference of a younger child upon request. The preferences of older children should normally be given greater weight than those of younger children;

(8) Evidence of physical or emotional abuse to the child, to the other parent or to any other person; . . . . .

(9) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child; and

(10) Each parent's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent, consistent with the best interest of the child.

Mother prevented him from being an equal caregiver in the Child's life. Arguing that Mother did not provide him with requested bills and receipts and that he had no child support obligation under the initial Plan, Father claims the court placed too much emphasis on the fact that he did not pay the enumerated expenses Mother stated were for the Child. He further asserts that Mother violated the Plan by unilaterally making the educational decision to place the Child in school in White Pine and that she has not promoted a good relationship with Father by surreptitiously moving from Seymour without notifying him. Father questions the trial court's decision that Mother's family unit is stable when he has maintained the same home and same job for a more extensive period of time. He claims that Mother's actions have impaired his relationship with the Child.

The trial court determined that although both parents love the Child, Mother most sees to his daily needs. Mother has provided the necessities and care, including all medical expenses, school expenses, and child care. Father has paid nothing. The trial court also found continuity to be an important factor, noting that the Child had lived and attended school in White Pine for three years and had a stable, satisfactory environment with Mother. The court further determined that it was not in the Child's best interest that Father had allowed the paternal grandmother keep the Child and had also let the Child ride toys that were not conducive to his safety because of his medical condition.

Based on the factors outlined in Tenn. Code Ann. §§ 36-6-106 and 36-6-404(b), we affirm the trial court's naming of Mother to be the primary residential parent as being in the best interest of the Child. Both parties are advised that failure to promote and encourage a close relationship between the Child and the other parent may result in this custody determination being reviewed in the future.

## B. Expenses and Attorney fees

In the previous judgment, this court remanded the trial court's order awarding Mother a judgment against Father in the amount of $8,409 for the Child's medical bills, one half of school expenses, supervision fees, babysitter's fees, and attorney fees to determine this issue in conformity with the Plan. The original Plan ordered the parties to split equally the cost of clothing and school expenses for the Child. The Plan also provided in regard to health insurance for the Child that both parties will maintain the same for the Child and that uncovered medical expenses shall be divided equally. Furthermore, the parent receiving the medical bill shall send the bill to the other parent within ten days, with the parent paying his/her portion within 30 days. Father testified that he had never received any bill or receipt related to these expenses other than a summary from Mother.

-13-

Father avers that Mother, due to her noncompliance in sending receipts or proof to him has failed to meet her burden of proof by a preponderance of the evidence in relation to the expenses. He further argues that the trial court abused its discretion in awarding attorney fees in this cause due to the fact that he has been forced to constantly seek relief from the court to maintain a relationship with the Child.

The original permanent parenting plan entered by the trial court provides that any uncovered medical expenses for the Child shall be divided equally between the parties. The parties also agreed to equally divide clothing and school expenses for the Child in the same parenting plan. They also agreed to split babysitter costs. Mother testified as to the amount of the expenses at trial. Her testimony was not contradicted.

In custody disputes, the question of whether to award attorney's fees and the amount of any such fees is largely in the discretion of the trial court, and the appellate court will not interfere except upon a clear abuse of that discretion. *Deas v. Deas,* 774 S.W.2d 167, 170 (Tenn. 1989).

We find the trial court did not abuse its discretion in granting Mother the requested fees and expenses. Upon our review of the record, there is no doubt that the court considered all the evidence, as well as the concerns expressed by Father, in making its determination. Father has failed to pay any expenses or to follow the trial court's orders. The court properly determined that Mother's request for attorney fees was reasonable.

## V. CONCLUSION

The determination of the trial court is affirmed and the case is remanded for such further proceedings as may be appropriate. Costs on appeal are assessed to the appellant, Jerry Alan Richards.

_____
JOHN W. McCLARTY, JUDGE