# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
Assigned on Briefs August 10, 2012

## AMANDA JANE (FILLERS) CRUM v. ARVIN DWAYNE FILLERS

### Appeal from the Chancery Court for Greene County
### No. 20050206    Hon. Thomas R. Frierson, II, Chancellor

---

### No. E2011-01885-COA-R3-CV-FILED-OCTOBER 11, 2012

---

In this post-divorce case, Mother sought to modify the existing custody arrangement relating to the Children that she shared with Father. At the time of divorce, the parties agreed to equal co-parenting time but designated Mother as the primary residential parent. Mother filed a petition to modify the parenting plan, alleging that a material change in circumstances had occurred. Father objected. The trial court held that there had been a material change of circumstances and that it was in the best interest of the Children to modify the parenting plan as Mother requested. Father appeals the court's modification decision. We affirm the decision of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and CHARLES D. SUSANO, JR., J., joined.

Francis X. Santore, Jr., Greeneville, Tennessee, for the appellant, Arvin Dwayne Fillers.

Duncan C. Cave, Greeneville, Tennessee, for the appellee, Amanda Jane (Fillers) Crum.

### OPINION

### I. BACKGROUND

Amanda Jane (Fillers) Crum ("Mother") married Arvine Dwayne Fillers ("Father") on November 30, 1996. Three children were born of the marriage, Robert, Matthew, and

Jonathan (collectively "the Children"). Mother and Father separated in March 2005, and a final decree of divorce was entered on July 11, 2005. Pursuant to their agreement, Mother was designated as the primary residential parent of the Children, while Father was tasked with remitting child support. The parenting plan provided that each parent would exercise 182.5 days of parenting time; however, Father's visitation was limited to every other weekend, five hours each Tuesday and Thursday, and regularly scheduled holidays. Father was not granted visitation during the Children's fall, spring, and summer vacations but was limited to the day-to-day schedule.

Mother filed the petition at issue in this case for civil and criminal contempt and for modification of the parenting plan on April 20, 2010. Mother alleged that Father refused to exercise holiday visitation, communicate with her in a rational manner, submit child support or report job changes, and carry health or life insurance; had verbally abused the Children and used vulgar language and offensive gestures in front of the Children; would not allow the Children to complete homework or bathe while in his care; and had claimed the Children on his income tax return in violation of the parenting plan. She stated that Father lived with a married woman, who used derogatory terms to describe her in front of the Children, that Father had encouraged the Children to disrespect her and her husband, and that Father had been convicted of domestic assault on two occasions. She also asserted that Matthew was failing two classes for failure to complete homework and that Robert expressed a desire to only visit Father every other weekend. In consideration of the foregoing, she sought an increase in child support, designation as the Children's primary residential parent,[1] and approval of her attached parenting plan that removed Father's Tuesday and Thursday visitation and limited his holiday visitation. Father denied Mother's allegations and sought dismissal of the petition.

Mother and Father participated in mediation but were unable to reach an agreement. A hearing on the petition was held during which Mother testified. The proceeding was not transcribed, and Mother and Father were unable to agree on a statement of the evidence. The court submitted its own statement of the evidence pursuant to Rule 24(e) of the Tennessee Rules of Appellate Procedure.

At the hearing, Mother testified that she, like Father, had remarried. She alleged that Father, while married, lived with another woman, who was married to another man. She stated that Father used vulgar language in front of the Children and referred to her in derogatory terms. She related that Father had claimed the Children on his most recent tax return in violation of their agreement and that he had claimed two of the Children in 2010. She asserted that Father had not maintained life insurance coverage for the Children, that

---

[1]Mother was designated as the primary residential parent in the 2005 agreed parenting plan.

electricity was not available at his current residence, and that one of the Children was injured while in his care. She opined that it was difficult for her to communicate with him regarding issues relating to the Children.

Mother acknowledged that the Children had been placed in State custody for three months during the pendency of a domestic abuse case in 2005. She related that following the resolution of the case, she and Father reverted back to the original parenting plan and that no further instances of domestic abuse had occurred.

Mother testified that according to the parenting plan in place, Father was to visit the Children every other weekend, every Tuesday and Thursday, and during holidays. She related that in 2006, Father only exercised Tuesday and Thursday visitation once a month; that in 2007, Father did not exercise his co-parenting time; and that recently, Father had refused to exercise holiday visitation. She admitted that she allowed Father to keep the Children overnight on occasion during the week even though the parenting plan limited Father's visitation to five hours on Tuesday and Thursday. She alleged that on at least three occasions, Father refused to return the Children to her at the allotted time pursuant to the parenting plan and that she retrieved the Children. She acknowledged that at times, she had refused to allow the Children to stay longer with Father because of her plans. She admitted that the procedure for exchanging the Children had improved since the filing of her petition for modification. Despite her complaints, she insisted that she promoted a healthy relationship between the Children and Father.

Mother insisted that the Children received the care that they needed while under her supervision. Relative to her employment, Mother claimed that she had lost her position of employment and did not wish to return even though she was eligible for re-hire. She explained that she had been sexually harassed at her previous place of employment and that she had continuing problems with kidney stones. She stated that she sought employment elsewhere and occasionally cleaned houses for money. She related that while her current husband, Mr. Crum, did not maintain full-time employment, he sought disability benefits and had maintained odd jobs on occasion. She said that Mr. Crum did not have a criminal history and was current on his child support obligation. She testified that she and Mr. Crum had been prescribed prescription medication but that she did not have health insurance. She claimed that she and Mr. Crum lived in a five-bedroom house and were able to timely submit rental payments of $325 per month to maintain their housing. She insisted that Father's current child support obligation was not enough for her to adequately support the Children and that Father owed approximately $1,328.59 in child support.

In consideration of the foregoing, the court found that a material change in circumstances had occurred. The court stated that since the entry of the parenting plan,

Father had not exercised all of his co-parenting time, that Father failed to return the Children to Mother on time, that Father made derogatory remarks about Mother in front of the Children, that one of the Children received an injury while in Father's care, that each parent had remarried, and that Mother and Mr. Crum were each under a regimen of prescribed medication. The court held that the changed circumstances warranted a modification in the residential schedule, responsibilities, decision-making authority, and special conditions and that the modifications contained in its revised parenting plan were in the best interest of the Children. In so holding, the court stated that its decision was based upon "the applicable factors and other criteria upon which Tennessee courts ha[d] made parenting determinations." The court ruled that Mother would continue in her role as primary residential parent but awarded Mother 285 days of co-parenting time, while Father was given 80 days of co-parenting time. The revised parenting plan provided that Father would exercise visitation every other weekend and for five hours each Tuesday and Thursday. The court also divided visitation between Mother and Father during the holidays and the Children's fall, spring, and summer vacations. The court increased Father's child support obligation to an amount consistent with the Child Support Guidelines and held Father in contempt for violating the parenting plan by claiming the Children in his tax return and by failing to maintain life insurance. This timely appeal of the modification decision followed.

## II.  ISSUE

We consolidate and restate the issue raised on appeal by Father as follows:

Whether the trial court erred in modifying the parenting plan by awarding Father with less than equal co-parenting time.

## III.  STANDARD OF REVIEW

On appeal, the factual findings of the trial court are accorded a presumption of correctness and will not be overturned unless the evidence preponderates against them. *See* Tenn. R. App. P. 13(d). The trial court's conclusions of law are subject to a de novo review with no presumption of correctness. *Blackburn v. Blackburn*, 270 S.W.3d 42, 47 (Tenn. 2008); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). Mixed questions of law and fact are reviewed de novo with no presumption of correctness; however, appellate courts have "great latitude to determine whether findings as to mixed questions of fact and law made by the trial court are sustained by probative evidence on appeal." *Aaron v. Aaron*, 909 S.W.2d 408, 410 (Tenn. 1995).

In applying the de novo standard, we acknowledge that "[t]rial courts are vested with wide discretion in matters of child custody" and that "appellate courts will not interfere

except upon a showing of erroneous exercise of that discretion." *Koch v. Koch*, 874 S.W.2d 571, 575 (Tenn. Ct. App. 1993). "Because '[c]ustody and visitation determinations often hinge on subtle factors, including the parents' demeanor and credibility during . . . proceedings themselves,' appellate courts are 'reluctant to second-guess a trial court's decisions.'" *Johnson v. Johnson*, 165 S.W.3d 640, 645 (Tenn. Ct. App. 2004) (quoting *Gaskill v. Gaskill*, 936 S.W.2d 626, 631 (Tenn. Ct. App. 1996)). Appellate courts should only set aside the trial court's judgment in such cases when it "falls outside the spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence found in the record." *Eldridge v. Eldridge*, 42 S.W.3d 82, 88 (Tenn. 2001).

## IV. DISCUSSION

Father asserts that the court failed to consider each factor applicable in its decision and did not order a custody arrangement that allowed for his maximum participation in the Children's lives as directed by the post-2011 version of Tennessee Code Annotated section 36-6-106(a). Mother responds that the court was not obligated to list each factor it considered or explain how each factor affected its overall determination.

It is well settled that "[a] custody decision, once final, is res judicata upon the facts in existence or reasonably foreseeable when the decision was made." *Scofield v. Scofield*, No. M2006-00350-COA-R3-CV, 2007 WL 624351, at *3 (Tenn. Ct. App. Feb. 28, 2007). However, because the circumstances of children and parents can change, the courts are "empowered to alter custody arrangements when intervening circumstances require modifications." *Id*. at *2 (citing Tenn. Code Ann. § 36-6-101(a)(1); *Massengale v. Massengale*, 915 S.W.2d 818, 819 (Tenn. Ct. App. 1995)).

When a petition to change or modify custody is filed, the parent seeking the change has the burden of showing (1) that a material change in circumstance has occurred and (2) that a change of custody or in the residential schedule is in the child's best interest. *Kendrick v. Shoemake*, 90 S.W.3d 566, 575 (Tenn. 2002); *Blair v. Badenhope*, 77 S.W.3d 137, 148 (Tenn. 2002); *In re M.J.H.*, 196 S.W.3d 731, 744 (Tenn. Ct. App. 2005); *In re Bridges*, 63 S.W.3d 346, 348 (Tenn. Ct. App. 2001). A finding that a material change in circumstance has occurred is a threshold inquiry. *Kendrick*, 90 S.W.3d at 570; *Blair*, 77 S.W.3d at 150; *see also Cranston v. Combs*, 106 S.W.3d 641, 644 (Tenn. 2003) (applying the standard affirmed in *Kendrick*); *Curtis v. Hill*, 215 S.W.3d 836, 840 (Tenn. Ct. App. 2006). "If a material change in circumstance[] has occurred, it must then be determined whether the modification is in the child's best interest[]." *Kendrick*, 90 S.W.3d at 570.

There are no bright line rules as to whether a material change in circumstance has occurred, but the Tennessee Supreme Court has directed courts to consider

(1) whether a change has occurred after the entry of the order sought to be modified;

(2) whether a change was not known or reasonably anticipated when the order was entered; and

(3) whether a change is one that affects the child's well-being in a meaningful way.

*Cranston*, 106 S.W.3d at 644 (citing *Kendrick*, 90 S.W.3d at 570). The determination of whether a "material change of circumstance" has occurred requires a different standard depending upon whether a parent is seeking to modify custody or modify the residential parenting schedule. *See* Tenn. Code Ann. §§ 36-6-101(a)(2)(B), (C); *Massey-Holt v. Holt*, 255 S.W.3d 603, 608 (Tenn. Ct. App. 2007).

Here, while Mother erroneously stated that she sought to modify the custody arrangement, she really sought to modify the residential parenting schedule. Indeed, the court did not change Mother's designation as the primary residential parent but merely changed the residential parenting schedule. Tennessee Code Annotated section 36-6-101(a)(2)(C) specifically provides,

If the issue before the court is a modification of the court's prior decree pertaining to *a residential parenting schedule,* then the petitioner must prove by a preponderance of the evidence a material change of circumstance affecting the child's best interest. A material change of circumstances does not require a showing of a substantial risk of harm to the child. A material change of circumstance for purposes of modification of a residential parenting schedule may include, but is not limited to, significant changes in the needs of the child over time, which may include changes relating to age; significant changes in the parent's living or working condition that significantly affect parenting; *failure to adhere to the parenting plan; or other circumstances making a change in the residential parenting time in the best interest of the child*.

Tenn. Code Ann. § 36-6-101(a)(2)(c) (emphasis added).

Father alleges that the purported change in circumstances must involve the child's circumstances, not the parents' circumstances. While the change in circumstance supporting the modification must affect the child's best interest, the change may relate to a parent's "failure to adhere to the parenting plan [] or other circumstances making a change in the

residential parenting time in the best interest of the child." Tenn. Code Ann. § 36-6-101(a)(2)(c). In this case, the court's ruling was premised upon Father's failure to adhere to the parenting plan and his derogatory comments about Mother. Having reviewed the record, we hold that the record supports the court's decision that a material change in circumstances occurred since the filing of the original parenting plan and that this change merited review of the residential parenting schedule.

Having concluded that a material change of circumstance occurred, we must now determine whether the trial court erred in finding that modification of the existing residential parenting schedule was in the best interest of the children. Father asserts that the court was required to consider the post-2011 version of Tennessee Code Annotated section 36-6-106(a) in making this determination. We disagree. Father never requested designation as the primary residential parent, and on appeal, he merely argues that the court erred in limiting his visitation. The modification at issue in this case related to the existing residential parenting schedule, not the initial custody determination. Accordingly, the court was not required to conduct a comparative fitness analysis pursuant to Tennessee Code Annotated section 36-6-106(a). *Holt*, 255 S.W.3d at 608 (holding that "the court erred in conducting a new comparative fitness analysis because it found no material change of circumstance on the subject of the identity of the primary residential parent").

In this case, the court was required to consider the factors set out in Tennessee Code Annotated section 36-6-404(b). *Id.* In setting the residential schedule, the court is instructed to consider,

(1) The parent's ability to instruct, inspire, and encourage the child to prepare for a life of service, and to compete successfully in the society that the child faces as an adult;

(2) The relative strength, nature, and stability of the child's relationship with each parent, including whether a parent has taken greater responsibility for performing parenting responsibilities relating to the daily needs of the child;

(3) The willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent, consistent with the best interests of the child;

(4) Willful refusal to attend a court-ordered parent education seminar may be considered by the court as evidence of that parent's lack of good faith in these proceedings;

(5) The disposition of each parent to provide the child with food, clothing, medical care, education and other necessary care;

(6) The degree to which a parent has been the primary caregiver, defined as the parent who has taken the greater responsibility for performing parental responsibilities;

(7) The love, affection, and emotional ties existing between each parent and the child;

(8) The emotional needs and developmental level of the child;

(9) The character and physical and emotional fitness of each parent as it relates to each parent's ability to parent or the welfare of the child;

(10) The child's interaction and interrelationships with siblings and with significant adults, as well as the child's involvement with the child's physical surroundings, school, or other significant activities;

(11) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment;

(12) Evidence of physical or emotional abuse to the child, to the other parent or to any other person;

(13) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child;

(14) The reasonable preference of the child if twelve (12) years of age or older. The court may hear the preference of a younger child upon request. The preference of older children should normally be given greater weight than those of younger children;

(15) Each parent's employment schedule, and the court may make accommodations consistent with these schedules; and

(16) Any other factors deemed relevant by the court.

Tenn. Code Ann. § 36-6-404(b). In setting the new residential schedule, the court did not articulate each of the factors applicable. The court merely stated that it considered the

applicable factors and other relevant criteria in concluding that a change in the residential schedule was warranted. Trial judges are not required to articulate each of the factors it considered and its application to the facts at issue in the case. *See Murray v. Murray*, No. M2009-01576-COA-R3-CV, 2010 WL 3852218, at *8 (Tenn. Ct. App. Sept. 28, 2010) ("[W]hile the statute requires the trial court to consider all the applicable factors, there is no statutory requirement that the court list every applicable factor along with its conclusion as to how that particular factor impacted the overall custody determination.").

Following our review, we note that the revised parenting schedule is substantially similar to the agreed parenting schedule that Father signed at the time of the divorce. We acknowledge that prior to the filing of her petition, Mother allowed Father to exercise additional visitation beyond that required in the agreed parenting schedule. While the trial court limited Father's time to that which was provided in the new parenting schedule, the new schedule gave Father more court-ordered co-parenting time than the agreed parenting schedule, namely Father received additional court-ordered visitation during the Children's fall, spring, and summer vacations. Moreover, Father did not submit a proposed parenting plan with his response to the petition for modification. *See* Tenn. Code Ann. § 36-6-405(a). Therefore, Mother's proposed parenting plan was the only proposal in front of the court. With these considerations in mind and recognizing the court's broad discretion on this matter, we hold that the record supports the trial court's modification of the parenting plan. Accordingly, we affirm the court's structuring of the new residential schedule.

## V. CONCLUSION

The judgment of the trial court is affirmed, and the case is remanded for such further proceedings as may be necessary. Costs of the appeal are taxed to the appellant, Arvin Dwayne Fillers.

_____
JOHN W. McCLARTY, JUDGE