# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
March 6, 2013 Session

## SANDY JANE SMART v. BRIAN WAYNE SMART

**Appeal from the Circuit Court for Franklin County**
**No. 16148CV     Buddy D. Perry, Judge**

---

**No. M2012-00818-COA-R3-CV- Filed July 31, 2013**

---

Mother and Father were divorced in 2007 and granted joint custody of their then-six year old child. Mother filed a petition for modification in which she asked to be named the primary residential parent because the joint arrangement was not working for the parties and was not in Child's best interest. Trial court granted Mother's petition to be named primary residential parent, but directed that major decisions for Child should be made jointly. Father appealed, arguing that trial court erred in finding material change of circumstances had occurred since the initial parenting plan was entered and that the comparative fitness analysis favored Mother as the primary residential parent. Mother appealed trial court's judgment regarding major decision making. We affirm trial court's judgment modifying the parenting plan to name Mother the primary residential parent and amend the plan to have Mother make major decisions for Child rather than both Mother and Father jointly. We affirm the trial court's denial of Mother's attorney fees but award her reasonable fees incurred on appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part and Amended in Part**

PATRICIA J. COTTRELL, P.J., M.S., delivered the opinion of the Court, in which ANDY D. BENNETT and RICHARD H. DINKINS, JJ., joined.

Floyd Don Davis, Norris Arthur Kessler, III, Winchester, Tennessee, for the appellant, Brian Wayne Smart.

Cynthia A. Cheatham, Manchester, Tennessee; for the appellee, Sandy Jane Smart.

## OPINION

Sandy Jane Smart ("Mother") and Brian Wayne Smart ("Father") were married in 1993 and had one child ("Child") who was born in December 2000. Mother and Father were

divorced in 2007, and the parenting plan (the "Initial Parenting Plan") provided for a joint custodial arrangement whereby each party was awarded equal time with Child. In 2011, when Child was ten years old, Mother filed a Petition to Modify Current Visitation and Custody because she did not believe the joint custody arrangement was working well for Child or the parties.

The trial court held an evidentiary hearing in February 2012. The individuals who testified included Mother, Father, and Mother's sister. The court also permitted Child, who was then eleven years old, to testify in a private setting. The evidence showed that for the first three years after the parties were divorced, Mother and Father discussed getting back together, and during this time they did not adhere strictly to the Initial Parenting Plan. Child spent more time with Mother than with Father during this time. Mother testified that Child stayed with her most of the weeks when school was in session and that Child went to Father's house every other weekend. When Child went to Father's during the school week Father usually brought Child back to Mother's the following morning before school. Mother took Child to her doctor's appointments, to many of her extracurricular activities, and was generally more involved with Child's day to day activities.

When Mother told Father that their attempted reconciliation was not going to work out, Father began to insist that they follow the Initial Parenting Plan more closely. Father's parents live close to Father's house, and when Father was working during his week with Child, Father had his parents pick Child up after school and keep her at their house. If Child needed help with her homework while Father was working and her grandparents were unable to help her, Child had to wake up early the next morning and ask Father for help before school. Mother asked Father to let Child stay with her when Father was working and could not spend time with Child, but Father refused and insisted that Child spend time with his family during his weeks, regardless of whether he personally had time to spend with Child.

Mother showed her willingness to exchange days with Father when Father wanted Child to attend a special event with him or his family, but Father was unwilling to reciprocate. Father's unwillingness to cooperate with Mother was evidenced when Mother's sister wanted Child to be in her wedding and the wedding happened to be when Father was supposed to have Child with him. Both Mother and Mother's sister asked Father to let Child attend the wedding, but Father refused. While Father was testifying about this at the hearing, the trial court interjected as follows:

> The Court: Why would you not let your daughter attend the wedding? Tell me about that. I am interested in it.
>
> Father: My mother had my child at my nephew's birthday party. They

wanted me to call her up and tell her to get [Child] back up here, you know, that they wanted to get ready for the wedding stuff and I wouldn't do it. She was at my nephew's birthday party. I didn't want to bother her. She knew nothing about the wedding until that day.

The Court: The wedding was the next day?

Father: Yeah. They had some pretty tough words to say to me in the hayfield, and I really didn't want to get along with them.

The Court: I think you are giving me a good answer there. You don't want to get along with them. They don't want to get along with you, and your little girl gets hurt in the middle of that.

Father: Yes, sir.

Evidence was introduced that Father has sworn at Mother and called her names in Child's presence, that Child has asked Mother not to phone her when she is with Father because Father gets upset with Child, and that Father has threatened Mother's father in a public place when Child has been present. Father admitted to spanking Child when she refused to eat a tomato sandwich Father had prepared for her when Father knew Child did not like tomatoes. Mother testified that Child suffered bruises from the spanking that lasted at least a couple of days. There was also evidence that Child's school grades began to suffer when Father began to insist that Child spend every other school week with him. When Father was unhappy with Child's school grades, he refused to allow Child to participate in a weekend extracurricular activity he knew meant a great deal to her.

Mother testified that Child told her Father said negative things about Mother to Child when she was with him and that Father did not allow Mother to speak with Child much on the telephone when Child was with Father. When Child was with Father for the week, Mother would go to Child's school to eat lunch with her on occasion. Mother testified Father got upset when he found out Mother saw Child at school and told Mother that when it was his week with Child Mother should not try to see Child because it was his time. Mother testified that Child wanted to see Mother, but asked Mother not to come to school anymore when she was staying with Father because she would get in trouble if Father found out. Mother, on the other hand, testified that she encouraged Father to try to see Child at school when it was Mother's week with Child.

In its Order following the hearing, the trial court first reviewed the evidence

presented. The trial court then found the following facts by a preponderance of the evidence:

1. The parties, by their actions, implicitly changed the current, court ordered parenting plan for a period of approximately three (3) years in a manner that worked better for [Child] and allowed [Mother] most of the parenting time during school nights.

2. Subsequently, the parties' attempted reconciliation failed and this situation directly impacted their ability to interact in a way that facilitates emotional stability for [Child] under the current parenting arrangement. Following the failed reconciliation, [Father] demanded strict enforcement of joint parenting, as ordered by the court, resulting in a rather drastic change in [Child's] life. The results have not been positive.

3. There is frequent disagreement, lack of cooperation and an abject failure to communicate by the parents such that a joint parenting arrangement is not in [Child's] best interests.

4. The joint custody arrangement is not working in [Child's] best interests as she is frequently subjected to dissension and disagreement.

The trial court thus determined that a material change of circumstances had occurred since the Initial Parenting Plan was entered and that the change materially and adversely affected Child. Then, after considering the factors set forth in Tenn. Code Ann. § 36-6-106(a), the trial court conducted a comparative fitness analysis and concluded that Mother should be designated the primary residential parent. The Permanent Parenting Plan the trial court entered provided Mother with 240 days with Child, Father with 125 days with Child, and indicated that major decisions were to be made jointly.

Father appealed the trial court's Order and argues the trial court erred in finding that a material change of circumstances had occurred since the parties' divorce that warranted a modification of the initial parenting plan. Father also argues that the trial court erred in weighing the facts in its comparative fitness analysis and determining that Mother should be named the primary residential parent. Mother argues the trial court erred in directing in the Permanent Parenting Plan that major decisions for Child should be made jointly and in failing to award Mother her attorney's fees.

**I. MODIFICATION OF PARENTING PLAN**

## A. Material Change of Circumstances and Child's Best Interest

Our review on appeal of the trial court's findings of fact is *de novo* with a presumption of correctness, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *Blair v. Brownson*, 197 S.W.3d 681, 684 (Tenn. 2006); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001); *Hass v. Knighton,* 676 S.W.2d 554, 555 (Tenn. 1984). We review a trial court's conclusions of law *de novo*, with no presumption of correctness. *Whaley v. Perkins*, 197 S.W.3d 665, 670 (Tenn. 2006); *Union Carbide Corp. v. Huddleston,* 854 S.W.2d 87, 91 (Tenn. 1993).

When a petition to change a parenting plan is filed, the parent seeking the change has the burden of showing that a material change in circumstances has occurred which makes a change of custody in the child's best interest. *Blair v. Badenhope*, 77 S.W.3d 137, 148 (Tenn. 2002); *In re M.J.H.*, 196 S.W.3d 731, 744 (Tenn. Ct. App. 2005); *In re Bridges*, 63 S.W.3d 346, 348 (Tenn. Ct. App. 2001). The needs of the child(ren) are the most important to consider; the parties' desires are secondary. *Boyer v. Heimermann*, 238 S.W.3d 249, 255 (Tenn. Ct. App. 2007).

A decision on a request for modification of a parenting arrangement requires a two-step analysis. *Cranston v. Combs,* 106 S.W.3d 641, 644 (Tenn. 2003). A party petitioning to change an existing plan must prove both (1) that a material change of circumstances has occurred and (2) that a change of residential schedule is in the child's best interest. *Kendrick v. Shoemake,* 90 S.W.3d 566, 575 (Tenn. 2002). Only after a threshold finding that a material change of circumstances has occurred is the court permitted to go on to make a fresh determination of the best interest of the child. *Kendrick,* 90 S.W.3d at 569; *Blair,* 77 S.W.3d at 150; *Curtis v. Hill*, 215 S.W.3d 836, 840 (Tenn. Ct. App. 2006).

As to the first requirement, *i.e.*, a material change of circumstances, the Tennessee Supreme Court has stated:

> Although there are no bright line rules as to whether a material change in circumstances has occurred after the initial custody determination, there are several relevant considerations: (1) whether a change has occurred after the entry of the order sought to be modified; (2) whether a change was not known or reasonably anticipated when the order was entered; and (3) whether a change is one that affects the child's well-being in a meaningful way.

*Cranston,* 106 S.W.3d at 644 (citing *Kendrick*, 90 S.W.3d at 570).

The General Assembly has also addressed the question of what constitutes a material

change of circumstances for purposes of changing a residential parenting schedule:

> (B) If the issue before the court is a modification of the court's prior decree pertaining to custody, the petitioner must prove by a preponderance of the evidence a material change in circumstance. A material change of circumstance does not require a showing of a substantial risk of harm to the child. A material change of circumstance may include, but is not limited to, failures to adhere to the parenting plan or an order of custody and visitation or circumstances that make the parenting plan no longer in the best interest of the child.

Tenn. Code Ann. § 36-6-101(a)(2)(B).

After finding that a material change in circumstances has occurred, the trial court must next determine whether modification of custody is in the child's best interest. The factors a court is to consider in making this determination include:

> (1) The love, affection and emotional ties existing between the parents or caregivers and the child;

> (2) The disposition of the parents or caregivers to provide the child with food, clothing, medical care, education and other necessary care and the degree to which a parent or caregiver has been the primary caregiver;

> (3) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment; provided, that, where there is a finding, under subdivision (a)(8), of child abuse, as defined in §39-15-401 or § 39-15-402, or child sexual abuse, as defined in § 37-1-602, by one (1) parent, and that a nonperpetrating parent or caregiver has relocated in order to flee the perpetrating parent, that the relocation shall not weigh against an award of custody;

> (4) The stability of the family unit of the parents or caregivers;

> (5) The mental and physical health of the parents or caregivers;

> (6) The home, school and community record of the child;

> (7)(A) The reasonable preference of the child, if twelve (12) years of age or older;

(B) The court may hear the preference of a younger child on request. The preferences of older children should normally be given greater weight than those of younger children;

(8) Evidence of physical or emotional abuse to the child, to the other parent or to any other person; provided, that, where there are allegations that one (1) parent has committed child abuse, as defined in § 39-15-401 or § 39-15-402, or child sexual abuse, as defined in § 37-1-602, against a family member, the court shall consider all evidence relevant to the physical and emotional safety of the child, and determine, by a clear preponderance of the evidence, whether such abuse has occurred. The court shall include in its decision a written finding of all evidence, and all findings of facts connected to the evidence. In addition, the court shall, where appropriate, refer any issues of abuse to the juvenile court for further proceedings;

(9) The character and behavior of any other person who resides in or frequents the home of a parent or caregiver and the person's interactions with the child; and

(10) Each parent's or caregiver's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, consistent with the best interest of the child. In determining the willingness of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, the court shall consider the likelihood of each parent and caregiver to honor and facilitate court ordered parenting arrangements and rights, and the court shall further consider any history of either parent or any caregiver denying parenting time to either parent in violation of a court order.

Tenn. Code Ann. § 36-6-106(a).

Evidence that a parenting plan providing for joint custody or joint primary residential placement is not working for the parties is sufficient to support a finding of material change of circumstances. *Vaccarella v. Vaccarella*, 49 S.W.3d 307, 315-16 (Tenn. Ct. App. 2001); *Turner v. Purvis*, 2003 WL 1826223, at *4 (Tenn. Ct. App. Apr. 9, 2003); *see Dalton v.*

*Dalton*, 858 S.W.2d 324, 326 (Tenn. Ct. App. 1993) (when joint custody fails to work due to recalcitrance of one or both parents, there is a material change of circumstances unanticipated when earlier parenting plan was put into place); *Dodd v. Dodd*, 737 S.W.2d 286, 290 (Tenn. Ct. App. 1987) ("the most important 'changed' circumstance is the fact – the proven fact – that the joint-custody plan fashioned by the court and the parties has worked to the detriment of the children").

The trial court found that Father's strict enforcement of the Initial Parenting Plan resulted in frequent disagreement and lack of cooperation between Mother and Father, which is not in Child's best interest. The trial court's conclusion that a material change of circumstances has occurred since the entry of the Initial Parenting Plan was based on its finding that the parties are unable to work together in a joint custody and joint primary residential arrangement. The evidence does not preponderate against the trial court's determination of this issue. Our review of the evidence reveals that the change of circumstance occurred after the entry of the order sought to be modified; the change was not known or reasonably anticipated when the order was entered; and the change is one that affects Child's well-being in a meaningful way. We therefore agree with the trial court's determination that Mother has satisfied her burden of establishing that a material change of circumstances has occurred.

We now turn to the second issue of whether a change the residential schedule is in Child's best interest and review the trial court's comparative fitness analysis. The trial court reviewed the factors set out in Tenn. Code Ann. § 36-6-106(a) and concluded Mother should be named the primary residential parent. The trial court found that both Mother and Father have demonstrated love for Child and that both parents are able to provide Child with food, clothing, medical care, education, and other necessities of life. When considering the importance of continuity in Child's life, the court determined that Mother was better equipped to provide Child with the continuity she needs.

In considering the mental and physical health of the parties the court wrote: "The facts support the conclusion that [Father] has had some difficulty controlling his anger. The anger issues have adversely affected [Child]. This factor weighs slightly in favor of [Mother]." Turning to the home, school, and community record of Child, the court found that Child's school grades have been adversely affected by the strict enforcement of the joint parenting schedule. The trial court considered Child's preference for which school she would attend, the one located in Mother's county of residence or the one located in Father's county of residence, and ultimately concluded Child should attend the school in Franklin County, where Mother resides.

The evidence presented at the hearing supports the trial court's comparative fitness analysis and decision to modify the parenting plan and name Mother the primary residential parent. Mother appears more willing to encourage Child to communicate with Father while Child is with Mother and to keep Father informed of Child's activities in an effort to keep Father involved with Child as much as possible. We affirm the trial court's judgment that it is in Child's best interest that the parenting plan be modified and that Mother be named the primary residential parent.

## B. DECISION MAKING

In the Permanent Parenting Plan the trial court directed Mother and Father to make decisions jointly insofar as they concern Child's education, non-emergency health care, and religious upbringing. Mother contends the trial court erred in this regard because the parties have had so much difficulty communicating and reaching any sort of consensus with regard to Child during the time they were sharing custody equally. We agree with Mother and amend the Permanent Parenting Plan to change the decision making authority from "joint" to "Mother" for Child's educational decisions, non-emergency health care, and religious upbringing. Mother shall remain the decision maker for Child's extracurricular activities. *See Dalton*, 858 S.W.2d at 326 (joint decision-making is not possible between parents who are unable to communicate effectively concerning their children).

## II. ATTORNEY'S FEES

In her petition to modify Mother asked the trial court to award her reasonable attorney fees, but the trial court declined to award Mother her fees.[1] Tennessee Code Annotated § 36-5-103(c) permits one parent to recover from the other parent reasonable attorney's fees incurred in an action seeking a change of custody:

> The plaintiff spouse may recover from the defendant spouse, and the spouse or other person to whom the custody of the child, or children, is awarded may recover from the other spouse reasonable attorney fees incurred in enforcing any decree for alimony and/or child support, or in regard to any suit or action concerning the adjudication of the custody or the change of custody of any child, or children, of the parties, both upon the original divorce hearing and at any subsequent hearing, which fees may be fixed and allowed by the court,

---

[1]The trial court did not mention anything about Mother's attorney's fees either at the hearing or in its Order. The trial court thus impliedly rejected Mother's request for these fees.

before whom such action or proceeding is pending, in the discretion of such court.

As the statute makes clear, the award of fees is not mandatory; it is up to the discretion of the court. Mother did not explain how the trial court abused its discretion in failing to award her these fees. Although we believe the trial court would not have erred in exercising its discretion to award Mother her fees at trial, we conclude the trial court did not abuse its discretion in failing to award Mother her fees.

Mother also seeks an award of the attorney's fees she has incurred on appeal. The decision to award fees incurred on appeal is a matter within this Court's discretion. *Moran v. Willensky*, 339 S.W.3d 651, 666 (Tenn. Ct. App. 2010). Mother is the prevailing party with regard to all issues raised on appeal, and we exercise our discretion to award Mother the reasonable attorney's fees she incurred on appeal. *See Moran*, 339 S.W.3d at 666 (in considering request for attorney's fees on appeal, Court of Appeals considers party's ability to pay fees, requesting party's success on appeal, good faith of the appeal, and any other relevant equitable factors). We remand this issue to the trial court to determine Mother's reasonable attorney's fees incurred in this appeal and for further proceedings consistent with this opinion.

### III. CONCLUSION

The trial court's judgment is affirmed in part and amended in part. The Permanent Parenting Plan naming Mother as the primary residential parent is affirmed in all respects except that Mother shall have sole decision making authority for Child including those regarding Child's education, non-emergency health care, religious upbringing, and extracurricular activities. The trial court's decision not to award Mother her attorney's fees incurred at trial is affirmed. Mother is awarded her reasonable fees incurred on appeal. This case is remanded to the trial court to determine the amount of Mother's reasonable attorney's fees incurred on appeal and for any further necessary proceedings.

The costs of this appeal shall be assessed against the appellant, Brian Wayne Smart, for which execution shall issue if necessary.

_____
PATRICIA J. COTTRELL, JUDGE